IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASSURITY LIFE INSURANCE COMPANY, | : | CIVIL ACTION |
| | : | |
| | : | No. 14-6522 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN NICHOLAS, EXECUTOR OF THE ESTATE OF SALLY NICHOLAS AND RITA THOMPSON, | : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM OPINION

**MARILYN HEFFLEY, U.S.M.J.**                                              **October 1, 2015**

Plaintiff Assurity Life Insurance Company ("Assurity Life") filed this action seeking a declaratory judgment and asserting claims for common law fraud and violation of the Pennsylvania Insurance Fraud Act, 18 Pa Cons. Stat § 4117 et seq. Assurity Life challenges the legitimacy of the procurement of a life insurance policy by Sally Nicholas and also asserts that the policy lapsed for non-payment of premiums. Sally Nicholas' executor, John Nicholas ("Nicholas"), has filed counterclaims seeking a declaratory judgment that the policy is validly in force and that the $250,000 policy benefits are due and payable (Count VIII). He also asserts claims for breach of contract (Count I), violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1 et seq. (the "UTPCPL")(Count II), fraud (Count III), intentional misrepresentation (Count IV), negligent misrepresentation (Count V), civil conspiracy (Count VI), and violation of the Pennsylvania Unfair Insurance Practices Act, 40 Pa. Cons. Stat. § 1171 et seq. (the "UIPA")(Count VII). For the reasons discussed below, the motion will be granted as to the claims for violation of the UTPCPL and UPIA, as well as for the

intentional and negligent misrepresentation, fraud, and civil conspiracy claims. The motion will be denied as to the breach of contract and declaratory judgment claims.

## I. BACKGROUND

In support of his counterclaims, Nicholas alleges as follows. On June 27, 2008, Assurity Life issued a 10-year term life insurance policy number 4350266250 in the amount of $250,000 to Sally Nicholas (the "Policy"). Answer & Countercl. ¶¶ 69-70 (ECF No. 4). For several years thereafter, Sally Nicholas paid, and Assurity Life accepted, premiums for the policy. Id. ¶ 72. Sally Nicholas had a ninth-grade education, suffered from anxiety, and frequently required the assistance of family members in handling her financial affairs. Id. ¶ 73. In 2011, Nicholas began handling her record-keeping and financial affairs. Id. ¶ 74. As of October 22, 2012, the premiums for the Policy were up to date and had been paid in a timely fashion. Id. ¶ 78. A billing statement generated by Assurity Life on November 14, 2012 reflected that a premium payment in the amount of $246.42 was due by December 28, 2012. Id. ¶¶ 79-80. On December 3, 2012, the Nicholases submitted a completed and signed Assurity Automatic Bank Payment form to Assurity Life by facsimile. Id. ¶ 82. Assurity Life declined to process automatic withdrawals based on the completed form.[1] Nicholas contacted Assurity Life to inquire what other forms of payment would be acceptable. Id. ¶ 84. An Assurity Life representative left Nicholas a telephone message stating that payment by debit card would not be acceptable. Id. ¶ 85. An Assurity Life representative then advised Nicholas that Assurity Life would accept payment by postal money order, so long as no individual money order exceeded $200. Id. ¶ 86. On December 20, 2012, Nicholas purchased two money orders in favor of Assurity Life, one for

---

[1] Assurity Life demanded a copy of a cancelled check from the account from which withdrawals would be taken. The bank account was a new one, however, and Assurity Life declined to accept the temporary checks then available to the Nicholases. Regular checks were not to become available until after the premium due date. Id. ¶ 83 n.1.

$180 and one for $75.  Id. ¶ 87.  Nicholas sent the money orders to Assurity Life on December 20, 2012, prior to the premium due date.  Id. ¶ 88.  By correspondence dated December 28, 2012—the day the premium was due—Assurity Life informed the Nicholases that it would not accept the money orders because, together, they totaled more than $200.  Id. ¶ 90.  In the same letter, Assurity Life advised, contrary to its prior telephone message, that it would accept payment by debit card, and demanded payment by January 7, 2013 in order to continue coverage.  Id. ¶¶ 91-92.  In response, Sally Nicholas paid the premium on January 1, 2013 using her debit card.  Id. ¶ 93.

At about the same time, Nicholas learned that Assurity Life had filed suit against Sally Nicholas seeking to rescind the Policy.  Id. ¶ 95.  Nicholas, acting pro se, contacted Assurity's counsel to inquire about the lawsuit and was told that he should "not worry" about it.  Id. ¶ 96.  Subsequently, Nicholas learned that a default judgment had been entered in the case.[2]  Nicholas contacted Assurity Life's counsel to inquire about the case and the need for payments of premiums but was told that the default judgment rendered the Policy null and void and that no further premium payments would be accepted.  Id. ¶¶ 97-98.

Sally Nicholas passed away on June 16, 2014.  Id. ¶ 100.  Nicholas then sought payment of the policy benefits.  Id. ¶ 102.  In response, Assurity Life instituted the current lawsuit seeking a declaration that the Policy is invalid and asserting its other claims against Nicholas.

---

[2]   Assurity Life conceded at oral argument that it did not obtain a default judgment, but only a default order.  Hearing Tr. at 6-7 (June 18, 2015).  Assurity Life voluntarily dismissed the case after it believed the Policy had lapsed for non-payment of premiums.  Id.

## II.     ANALYSIS

### A.     Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  "In light of Twombly, 'it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of [the proscribed conduct].'"  Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  "'[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.'"  Great W. Mining, 615 F.3d at 177 (quoting Twombly, 550 U.S. at 556).

In determining the adequacy of a counterclaim, the Court must accept the counterclaim's factual allegations as true and draw all reasonable inferences in the light most favorable to the defendant. GE Capital Mortg. Servs., Inc. v. Pinnacle Mortg. Inv. Corp., 897 F. Supp. 854, 860 (E.D. Pa. 1995).  To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint (or, as here, the counterclaims), exhibits attached to the complaint (or, as here, the counterclaims) and matters of public record.  Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

B. **Breach of Contract Claim (Count I)**

Assurity Life contends that Nicholas' breach of contract claim should be dismissed because the Policy was not in force at the time of Sally Nicholas' death due to non-payment of premiums. Limited as the Court is on this motion to the allegations of the counterclaims, the Court cannot reach that conclusion. Nicholas concedes that he and Sally Nicholas did not make any premium payments after his conversation with Assurity Life's counsel, but asserts that they did not do so because Assurity Life refused to accept additional premium payments. Answer & Countercl. ¶¶ 97-99. "'As a general rule, when one party to a contract unilaterally prevents the performance of a condition upon which his own liability depends, the culpable party may not then capitalize on that failure.'" Benchmark Grp., Inc. v. Penn Tank Lines, Inc., 612 F. Supp. 2d 562, 580 (E.D. Pa. 2009) (quoting Apalucci v. Agora Syndicate, Inc., 145 F.3d 630, 634 (3d Cir. 1998)). Thus, where a party to a contract prevents the other contracting party from performing its obligations under the contract, it has breached the contract. Benchmark Grp., 612 F. Supp. 2d at 580. Here, Nicholas has alleged that Assurity Life prevented Sally Nicholas from performing her obligations under the Policy by refusing to accept payment. Thus, he has adequately alleged that Assurity Life breached its contract, and Assurity Life's argument that the Policy lapsed for non-payment of premiums is unavailing on the present motion.

C. **UTPCPL Violation Claim (Count II)**

Assurity Life contends that Nicholas' UTPCPL claim should be dismissed under the economic loss doctrine. Under Pennsylvania law, the economic loss doctrine provides that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." Excavation Technologies, Inc. v. Columbia Gas Co. of Pennsylvania, 985 A.2d 840, 841 n.3 (Pa. 2009). The doctrine "prohibits plaintiffs from

recovering in tort economic losses to which their entitlement flows from a contract." Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995). It is "designed to . . . establish clear boundaries between tort and contract law." Id. at 680–81. The doctrine bars claims:

> "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract."

Pesotine v. Liberty Mut. Group, Inc., No. 3:14-784, 2014 WL 4215535, at *4 (M.D. Pa. Aug. 25, 2014) (quoting Reed v. Dupuis, 920 A.2d 861, 864 (Pa. Super. Ct. 2007)).

The issue whether the economic loss doctrine bars claims brought under the UTPCPL has created significant dispute in Pennsylvania. The Pennsylvania Supreme Court has not yet ruled on whether the doctrine bars claims for UTPCPL violations. The Third Circuit, however, in Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir. 2002), predicted that the Pennsylvania Supreme Court would apply the doctrine to such claims. The Third Circuit's prediction in Werwinski has long been subject to criticism. See, e.g., O'Keefe v. Mercedes–Benz USA, LLC, 214 F.R.D. 266, 275 (E.D. Pa. 2003); Smith v. Reinhart, 68 Pa. D. & C.4th 432, 437-38 (Lancaster Cnty. Ct. CP. 2004). In Knight v. Springfield Hyundai, 81 A.3d 940, 951-52 (Pa. Super. Ct. 2013), the Pennsylvania Superior Court held that UTPCPL claims are not subject to the economic loss doctrine because they are statutory claims that do not sound in negligence. Courts that have addressed the issue after Knight have been split in their determinations. Some courts have held that Werwinski no longer is controlling authority and have followed Knight in ruling the doctrine inapplicable to claims brought under the UTPCPL. Roberts v. NVR, Inc., No. 15-489, 2015 WL 3745178, at *5 (W.D. Pa. June 15, 2015); Horne v. Progressive Advanced Ins.

6

Co., No. 15-1029, 2015 WL 1875970, at *1 n.1 (E.D. Pa. April 24, 2015); Kantor v. Hiko Energy, LLC, No. 14-5585, 2015 WL 1650049, at *3 (E.D. Pa. April 14, 2015).  Other courts have held that Werwinski's prediction of the Pennsylvania Supreme Court's ruling on the economic loss doctrine remains binding on the district courts in this Circuit.  McGuckin v. Allstate Fire & Cas. Ins. Co., No. 15-2173, 2015 WL 4579028, *3 (E.D. Pa. July 30, 2015); Vaughan v. State Farm Fire & Cas. Co., No. 14-1684, 2014 WL 6865896, at *4 & n.6 (E.D. Pa. Dec. 3, 2014); Pesotine, 2014 WL 4215535, at *4 n.1; Gadley v. Ellis, No. 13-17, 2014 WL 3696209 at *4–5 (W.D. Pa. July 23, 2014); see also Abraham v. Ocwen Loan Servicing, LLC, No. 14-4977, 2014 WL 5795600, at *7 n.3 (E.D. Pa. Nov. 7, 2014) (Werwinski remains the binding law of the Third Circuit); Moore v. State Farm Fire & Cas. Co., No. 14-3113, 2015 WL 463943, at *2 (E.D. Pa. Feb. 4, 2015) (applying Werwinski after Knight ); Zeglen v. Nw. Mut. Life Ins. Co., No. 14-173, 2014 WL 4215531, at *4 (M.D. Pa. Aug. 25, 2014) (same).

     This Court concludes that it is bound by the Third Circuit's prediction that the Pennsylvania Supreme Court will rule the economic loss doctrine applicable to UTPCPL claims until the Third Circuit or the Pennsylvania Supreme Court rule otherwise.  Tubman v. USAA Cas. Ins. Co., 943 F .Supp. 2d 525, 531 (E.D. Pa.2013); DeFebo v. Andersen Windows, Inc., 654 F. Supp. 2d 285, 294 (E.D. Pa.2009).  That a panel of the Pennsylvania Superior Court has ruled the doctrine inapplicable does not alter that conclusion.  See Cohen v. Am. Int'l Ins. Co., No. 95-5243, 1996 WL 103793, at *3 (E.D. Pa. March 7, 1996) ("The Third Circuit's prediction of how Pennsylvania's highest court will rule carries authority independent of intermediate state court's decisions.  In fact, the Third Circuit need not follow these decisions."); accord McGuckin, 2015 WL 4579028, at *3.  Accordingly, Nicholas' UTPCPL claim will be dismissed.

### D. Fraud, Intentional Misrepresentation, and Negligent Misrepresentation (Counts III through V)

Assurity Life contends that Nicholas' claims for fraud, intentional misrepresentation, and negligent misrepresentation also should be dismissed pursuant to the economic loss doctrine. That contention is correct. The alleged conduct upon which Nicholas bases his claims is "Assurity's actions in refusing to accept Policy premium payments (See Counterclaim, ¶¶ 79-94), lying about what forms of payment were acceptable for Policy premium payments (See Counterclaim, ¶¶ 85, 92), and representing to Responding Defendant that the Policy was null and void (See Counterclaim, ¶¶ 98)." Opp. at 6. Thus, the duties Nicholas claims Assurity Life breached are the duties to accept payment of premiums and to communicate truthfully regarding matters related to the payment of premiums. Those duties "aris[e] solely from a contract between the parties" and are "created and grounded in the contract itself." Pesotine, 2014 WL 4215535, at *4 (citation and internal quotation marks omitted). Consequently, they fall squarely within the definition of claims to which the economic loss doctrine applies.

Nicholas' argument that the claims relate to fraudulent conduct rather than to "the black letter language of the policy contract itself" is unavailing. An exception to the economic loss doctrine does exist for certain claims based on fraud in the inducement where the fraud is "extraneous to the alleged breach of contract, not interwoven with the breach of contract." Stein v. Fenestra Am., L.L.C., No. 09-5038, 2010 WL 816346, at *4 (E.D. Pa. March 9, 2010). The fraud exception does not apply when the representations concern the subject matter of the contract or the party's performance." Reilly Foam Corp. v. Rubbermaid Corp., 206 F. Supp. 2d 643, 659 (E.D. Pa. 2002). Where "the crux of [the] Plaintiff's allegations . . . is that [the] Defendant has not fulfilled its obligations under the insurance contract," the economic loss doctrine bars recovery for that failure. Vaughan, 2014 WL 6865896, at *5. The representations

8

upon which Nicholas bases his fraud, intentional misrepresentation and negligent misrepresentation claims directly involve Assurity Life's performance of the contract and, therefore, the exception does not apply to them.[3]  Accordingly, those counts will be dismissed.

### E.     Civil Conspiracy Claim (Count VI)

In Count VI of the counterclaims, Nicholas alleges that Plaintiff "acted in concert with other individuals, including but not limited to Eunice Cramer . . . ."  Answer & Countercl. ¶ 141. To establish a civil conspiracy claim, a plaintiff must allege: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. . . .  Proof of malice, or an intent to injure is also an essential part of a cause of action for conspiracy."  Montgomery Cnty., Pa. v. MERSCORP, Inc., 904 F. Supp. 2d 436, 453 (E.D. Pa. 2012) (quoting Commonwealth v. TAP Pharm. Prods., Inc., 36 A.3d 1112, 1144 (Pa. Commw. Ct. 2011)).[4]

With the dismissal of Nicholas' tort claims, however, no basis remains on which to ground a conspiracy claim.  "Pennsylvania law mandates that 'absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act.'"  Accurso v. Infra-Red Servs., Inc., 23 F. Supp. 3d 494, 512 (E.D. Pa. 2014) (quoting Goldstein v. Phillip

---

[3]     Because Counts III through V are subject to dismissal on the merits, the Court will not address Assurity Life's contention that they are not pleaded sufficiently.

[4]     Assurity Life contends that Nicholas has not adequately pleaded a conspiracy claim because he has alleged only that it has conspired with its own agent, Eunice Cramer.  The alleged fact that Ms. Cramer is an Assurity Life agent, however, is not contained in the counterclaims. For purposes of considering a 12(b)(6) motion, the Court may only consider the allegations as pleaded and the responding party is precluded from asserting new allegations in its opposition papers or its evidentiary materials.  CNA v. United States, 535 F.3d 132, 138 n.3 (3d Cir. 2008) (a court may not look outside the pleadings when considering a 12(b)(6) motion).  Accordingly, the Court will not address Assurity Life's argument on the merits.

Morris, Inc., 854 A.2d 585, 590 (Pa. Super. Ct. 2004)).  Therefore, a plaintiff charging civil conspiracy must "plead or develop a[ ] separate underlying intentional or criminal act that can support a civil conspiracy claim."  Accurso, 23 F. Supp. 3d at 512.  Here, with the tort claims dismissed, what Nicholas complains of is an alleged conspiracy to breach Assurity Life's contract with Sally Nicholas by refusing to accept premium payments.  A breach of contract cannot serve as the basis for a civil conspiracy claim.  Id. at 513-14.  Accordingly, Nicholas' civil conspiracy claim will be dismissed.

> F.  **Unfair Insurance Practices Act Claim (Count VII)**

Assurity Life seeks dismissal of Count VII of the counterclaims, which is based upon the UIPA.  "The UIPA expressly provides that enforcement of its provisions is the responsibility of the Insurance Commissioner and does not confer a private right of action."  Johnson v. State Farm Ins. Co., 695 F. Supp. 2d 201, 214 (W.D. Pa. 2010); D'Ambrosio v. Pa. Nat'l Mut. Cas. Ins. Co., 431 A.2d 966, 969-70 (Pa. 1981).

Nicholas concedes that under Pennsylvania law, no private right of action exists under the UIPA, but his counsel contended at oral argument that, although there is no private cause of action under the UIPA, the standard for a bad faith claim can be satisfied by showing a violation of the UIPA.  Hearing Tr. at 28-29 (June 18, 2015).  While there may be some extent to which conduct violative of the UIPA could serve as the basis for a bad faith claim, see Moore, 2015 WL 463943, at *1, the simple answer here is that Nicholas has not pleaded a bad faith claim.  A separate count asserting a claim directly under the UIPA cannot stand, and the UIPA claim will be dismissed.

G. **Declaratory Judgment Claim (Count VIII)**

In Count VIII of the counterclaims, Nicholas seeks a declaratory judgment. Assurity Life moves for dismissal of the claim on the theory that it is duplicative and superfluous. Assurity Life contends that if it is unable to prevail on its claim for declaratory relief, the ruling against it will effectively constitute a declaratory judgment in favor of Nicholas, rendering Nicholas' counterclaim unnecessary. The Third Circuit has noted that dismissal of a counterclaim may be justified where it is clear that there is "complete identity of factual and legal issues between the complaint and the counterclaim" and where the favorable ruling on declaratory judgment would render the request for declaratory relief in the counterclaim moot. Aidens v. Packel, 524 F.2d 38, 51-52 (3d Cir. 1975). Thus, in Principal Life Ins. Co. v. Minder, No. 08-5899, 2009 WL 1917096, at *2 (E.D. Pa. July 1, 2009), where an insurer sought a declaration that a policy was void ab initio and the policyholder sought a declaration that the policy remained in force, the court found the disputed issue—the validity of the policy—was identical and dismissed the counterclaim. In contrast, in ProCentury Ins. Co. v. Harbor House Club Condo. Ass'n, Inc., 652 F. Supp. 2d 552, 556-57 (D.N.J. 2009), where an insurer sought a declaration that the policy was void ab initio, but the policyholder sought a declaration that payment under the policy was due, the court held the declaratory judgment claims were not identical and declined to dismiss the counterclaim. The court noted that "[a] declaration that ProCentury properly rescinded the policy is different from a declaration that payment is due under the policy." Id. at 557.

In the present case, Assurity Life seeks, inter alia, a declaration as to: (1) whether the Policy has lapsed due to non-payment of premiums; (2) whether the Policy is void due to a lack of insurable interest at inception; and (3) whether a death benefit is payable under the Policy. Compl. at 11 ¶ C-E. In Count VIII of his counterclaims, Nicholas seeks "a declaration that the

death benefit of $250,000 is payable, and due and owing under the Policy." Answer & Countercl. at 31 ¶ E.  A request for a general declaration that the Policy is lapsed or void does not present issues identical to a request for a judgment in favor of a specific plaintiff in the amount of $250,000 that is currently due and can be executed upon by him.  ProCentury Insurance, 652 F. Supp. 2d at 557; see also Iron Mountain Sec. Storage Corp. v. Am. Specialty Foods, Inc., 457 F. Supp. 1158, 1161–62 (E.D. Pa. 1978) (counterclaim was not superfluous because counterclaimant was entitled to pursue declaration that its own policy interpretation was correct and not settle merely for a declaration that the other party's interpretation was incorrect). Accordingly, Nicholas' declaratory judgment count is not merely repetitive of Assurity Life's declaratory judgment claim and it will not be dismissed by this Court.

### III.    CONCLUSION

For the foregoing reasons, the Motion to Dismiss is granted as to Counts II through VII and is denied as to Counts I and VIII.  An appropriate Order follows.


*/s/ Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE